*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DAMIEN T. WEEKLY,

        Plaintiff-Appellee,

v

ANASTY C. WEEKLY,

        Defendant-Appellant.

UNPUBLISHED
August 21, 2025
2:00 PM

No. 373510
Wayne Circuit Court
LC No. 18-107325-DM

Before: YOUNG, P.J., and LETICA and KOROBKIN, JJ.

PER CURIAM.

In this postjudgment divorce matter, defendant appeals as of right the trial court's order denying her motion for change of domicile for the parties' two minor children, DTW and VW. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

The parties were married in Texas in 2011. DTW was born in 2011, and VW was born in 2014. After living in Texas and Illinois, the parties settled in Michigan in 2014. The parties divorced in 2019. The judgment of divorce awarded the parties joint legal and physical custody of the children, with equivalent parenting time. The children's domicile was the state of Michigan. After the divorce, the parties resided in separate homes. Plaintiff purchased a three-bedroom home in Wyandotte with DTW and VW each having their own bedroom. Plaintiff's fiancé also lived in the home. Defendant lived in a home in Romulus. The parties did not have substantial family support in Michigan. Plaintiff's family primarily lived in Illinois and defendant's family lived in Virginia.

In 2024, defendant started a new job as a customs specialist at a logistics company with an office in Washington, D.C. The position increased defendant's salary by about $8,000 annually. Because defendant was required to relocate to keep her position, she filed a motion for change of domicile to Virginia. Specifically, defendant proposed moving into a five-bedroom, two-bathroom home occupied by her brother, sister-in-law, and their three daughters. Defendant contended the relocation would improve her children's quality of life because her relatives would be available to help raise and nurture the children. She asserted the change of domicile was in the children's best

-1-

interests. Plaintiff opposed the motion, alleging defendant did not address, or establish by a preponderance of the evidence, that a change of domicile was warranted under the "the *D'Onofrio* factors."[1] See also MCL 722.31(4). Even if defendant demonstrated the *D'Onofrio* factors, plaintiff alleged that the children had an established joint custodial environment with defendant and plaintiff and relocation to Virginia would disrupt this arrangement. Plaintiff asserted that defendant did not show, by clear and convincing evidence, that relocation was in the children's best interests under MCL 722.23. Defendant filed a supplement to her motion arguing the *D'Onofrio* factors supported a change of domicile.

At the initial hearing, defendant testified in favor of the domicile change. Defendant noted her ability to love and provide for the children as well as her parenting techniques. At one point, the trial court redirected defendant's counsel to address the proposed change of domicile as opposed to the children's best interests. Defendant thereafter testified about how her job required her to relocate to Virginia, where she had family. In Michigan, defendant lacked familial support and she described how moving to Virginia would allow her to raise the children "with a village." Defendant's counsel asked the trial court if she should "do the best interest test now?" The trial court stated: "Yes." Defendant continued her testimony by addressing the children's schooling. Specifically, she noted that DTW has special needs, including speech and language delays, and receives an individualized education program and a behavioral improvement plan to manage his emotional impairment. Defendant opined the Virginia school would offer a better curriculum for DTW particularly because her brother works there and he would be an "in-house advocate." Defendant testified regarding how the children would benefit by living with her brother's family, with whom they were bonded.

Defendant's counsel expressed surprise that the best interests hearing was being conducted. The trial court replied: "A change of domicile, which is the subject of the motion . . . has to take into account the best interests of the children. So, I thought that I was following your lead on what you expected to accomplish. . . ." Plaintiff's counsel noted defendant had to meet her burden under the *D'Onofrio* factors before the trial court could assess the children's best interests. The trial court stated defendant "met the threshold, the factors that have been addressed in testimony so far." The trial court continued:

> I'm not sure we've covered everything in testimony, just in the, basically, opening statement that [defendant's counsel] provided. So, if there's anything else you need to cover, [defendant's counsel], to meet that threshold with your witness, feel free to do so. And then I can take testimony through questioning by [plaintiff's counsel] of [plaintiff], and we can resolve that part of the case, and then continue if . . . the threshold is met[,] with the best interest, okay?

---

[1] *D'Onofrio v D'Onofrio*, 144 NJ Super 200; 365 A2d 27 (Ch Div, 1976), aff'd 144 NJ Super 352; 365 A2d 716 (App Div, 1976). Michigan courts eventually determined that the *D'Onofrio* factors *must* be considered when examining a request to change a child's domicile to another state. See *Brecht v Hendry*, 297 Mich Ap 732, 739; 825 NW2d 110 (2012), citing *Overall v Overall*, 203 Mich App 450, 458; 512 NW2d 851 (1994).

Plaintiff's counsel inquired: "[A]re you suggesting that we continue testimony to establish the threshold, and then the [trial court] will then give us a new evidentiary hearing date on the best interest?" The trial court replied: "Yes." Defendant's counsel asked: "[Y]ou said you were satisfied with the threshold being met?" The trial court replied: "From your comments, your opening statements."

Plaintiff testified the children were already enrolled in Michigan for the school year beginning in the fall of 2024. He explained his relationship with the children, noting he was a "major proponent" in their lives. After the divorce, the children struggled with the transition of living between two homes. Plaintiff opined that defendant's relocation to Virginia would inhibit his ability to maintain a relationship with the children. The trial court remarked that defendant "established the threshold criteria indicating credible evidence that a move would be beneficial to the family." The trial court continued:

> That is by no means a determination of the ultimate question over whether there should be a change of domicile, but just the threshold that [defendant's] put forth sufficient evidence to suggest that it could be in the children's best interest. . . . If there was a move, I'm assuming that would change, based on the fact that they're school aged, to [defendant] having a greater percentage of parenting time than [plaintiff]. . . . Something else could be worked out. I believe both parents are gainfully employed and could arrange to travel. The issues that I'd be concerned with at the next phase of the hearing is I'm not convinced that there's any credible evidence of abusiveness on [plaintiff's] part, and I do hear some credible concerns about [] [defendant's] motivations for taking action concerning [DTW's] health, without the involvement of [] [plaintiff], as well as escalating, rather than deescalating situations in which [plaintiff] should be involved, and [defendant's] attempt to exclude him. So, those issues would probably be the focus of further hearings. But for today, I do find that the threshold has been met and we can move on to a selected date for an in-camera interview . . . of the children. . . . And then, we can . . . continue with an in-person hearing on the children's best interests. . . .

At the next hearing, defendant testified regarding her positive relationship with the children. At one point, the trial court interjected, provided an overview of the four steps required for a change of domicile motion, and noted, "where we've started so far is, at the end, best interest." Defendant's counsel asserted the *D'Onofrio* factors were previously addressed, and the parties were permitted to proceed regarding the best-interest factors. Plaintiff's counsel agreed. The trial court replied: "All right. [W]e . . . covered the hurdle of whether the change is warranted." Regarding the children's established custodial environment, counsel stipulated (1) there was joint custody and equal parenting time, and (2) moving the children would result in a change of the established custodial environment. The trial court found "the circumstances do establish a change in the established custodial environment from the children's two homes . . . in Michigan, to the request to move out of state." The trial court found the change of residence "would change the established custodial environment," and noted, "now we're focused on whether the move is in the [children's] best interest." Defendant continued her testimony, proposing that plaintiff would be able to see the children on holidays or "anytime that they're not in school." Defendant maintained DTW's special needs would be addressed in Virginia, including with help from her brother.

Defendant opined both children would benefit from growing up with more family, attending school in Virginia, and receiving additional home schooling from defendant's sister-in-law.

Plaintiff testified regarding his relationship with the children. The children were enrolled in school and extracurricular activities. Plaintiff assisted the children with their homework and spent time with them outside. VW's friends were in Michigan. Although DTW was bullied and acted out, he recently began an online friendship through a videogame. Plaintiff testified that he had established relationships with staff at DTW's school to address the bullying. If the children moved to Virginia, plaintiff opined that his family would be unable to spend time with them. And plaintiff was concerned that his communication with the children would also decrease. Although plaintiff purchased a cell phone for DTW to use to call him, defendant did not want DTW to have a cell phone. Plaintiff suspended the cell phone service because defendant prohibited DTW from using the phone. Plaintiff testified he would foster the children's relationship with defendant and her family in Virginia by allowing visits and regular phone calls.

The parties disputed whether domestic violence occurred in their relationship, the children's exposure and experience with violence, and the exercise or manipulation of parenting time. Defendant alleged that plaintiff committed domestic violence upon her that involved choking and an injury to her lip.[2] Plaintiff adamantly denied any domestic violence and asserted that such actions would have prevented his honorable discharge and deprived him of military benefits. Defendant further questioned whether DTW's actions were influenced by plaintiff and claimed that the children were fearful of plaintiff. Plaintiff acknowledged that he was investigated by Children's Protective Services, but the case was not substantiated and was closed. The investigation arose from plaintiff's attempt to calm DTW during a "meltdown" by grabbing him by the back of the neck. Lastly, defendant alleged that plaintiff took the children to Chicago without her authorization and interfered with her parenting time, causing her to file a police report. To the contrary, plaintiff testified that defendant claimed to travel for a business trip so he took the children to visit his family. He asserted that defendant also violated the parenting time agreement and deprived him of the opportunity to take the children to a family event.

Although defendant indicated that she would move into her brother's home, she did not discuss her children's sleeping arrangements. Nor did defendant say how long she intended to live with her brother's family. And, although defendant proposed that plaintiff could have the children during holidays and school breaks, she did not address whether the children would travel by car, bus, or plane between the parties' homes, the cost of the travel and who would bear it, and the reduction in plaintiff's parenting time as a result of her move to Virginia. Defendant pledged to foster communication between the children and plaintiff. But, defendant acknowledged that she had DTW evaluated and learned that DTW was not autistic. Defendant admitted that she did not apprise plaintiff of the evaluation before it occurred and after the result was disclosed.

At the final hearing, the parties stipulated the children's domicile was in Michigan. The trial court delineated the *D'Onofrio* factors. Under MCL 722.31(4)(a), the trial court found the

---

[2] The trial court did not admit plaintiff's photographs of her purportedly injured lip. It determined that the injury was seemingly inconsistent with the description of the incident.

move to Virginia would improve defendant's quality of life because she would live "with relatives" and "improve her income earning capacity." The trial court continued:

> [T]he [trial court] has to consider [] whether a home in Virginia would be an improvement over the home in Michigan with plaintiff. . . . There are some aspects of living in the setting that [] [defendant] has arranged in Virginia that would be an improvement for [DTW], to the extent that, in the household where [] [defendant] would be living, there is a relative who is able and willing to help support [] [defendant] and her parenting of [DTW] because of his emotional, mental challenges that have the capacity to interfere with his educational process and his behavioral controls. Although that benefit to living in Virginia would be something that would help the child as well as [] [defendant], I have to consider whether that would be an improvement of the quality of his life. [DTW] has an established relationship with [] [plaintiff]. I don't think that there can be anything that can substitute for [DTW's] father's presence and regular influence in his life, when the further statutory factors for consideration would militate in [] [plaintiff's] interests. We will get to those. Certainly, [] [defendant] is to be commended for establishing a setting where [DTW] could benefit from, I believe, [defendant's] brother's presence, given his experience in the behavioral issues presented by [DTW]. However, that cannot compensate for the absence of [DTW's] father. With respect to [VW], I don't see any benefit to [VW] in living in Virginia, as opposed to living in Michigan. The most that I can gather from all of the circumstances is that happier parents make happier children, and, certainly, [] [defendant] pursuing her career objectives, living in a setting with supportive relatives, would make her happier and more content, would have some benefit to both children. However, again, not to the exclusion of [plaintiff] from their everyday life.

The trial court addressed MCL 722.31(4)(b), finding this consideration was not "at hand" in this case, and both parents complied with parenting time. The trial court addressed MCL 722.31(4)(c), finding there was no evidence showing the change of domicile for the children "would provide regular and continuous contact with" plaintiff. Instead, defendant "has not really focused on preserving or fostering the parent[]relationship between [] [plaintiff] and the [children], because I haven't heard any proposal of what type of parenting time arrangement could preserve their relationship with [] [plaintiff]. . . ." The trial court noted advance planning efforts were required, but defendant failed to address travel logistics or financing. The parties did not discuss how to minimize interference with the children's school schedules if the children's domicile changed. Concerning MCL 722.31(4)(d), the trial court found neither party was "motivated by any interest in increasing or reducing child support obligations." Regarding MCL 722.31(4)(e), the trial court did not find "there was any domestic violence to be considered here[.]"

The trial court concluded it was "not satisfied the preliminary requirements of MCL 722.31(4) have been established," and "a change of domicile is not serving the children's best interests." The trial court did not find it necessary to assess the best-interest factors. Defendant's counsel interjected, noting: "[I]n our initial hearing . . . you said that the [*D'Onofrio*] factors were satisfied, and that we could move forward with the best[-]interest test, so, I'm a little confused." The trial court asked if the parties stipulated to the *D'Onofrio* factors, and defendant's counsel answered: "No. There was a finding." Plaintiff's counsel noted the trial court "found that

-5-

[defendant] had passed the [*D'Onofrio*] test, which allowed, then, for us to proceed with the evidentiary hearing on the best[-]interest factors." Plaintiff's counsel also noted the trial court was "within its rights to end its analysis if" the *D'Onofrio* factors were not satisfied. The trial court did not recall hearing arguments regarding the "statutory threshold," but noted it "could be confused with another case in which the parties stipulated to the threshold." Defendant's counsel noted the trial court "thought that [she] established the burden," and plaintiff's counsel agreed. The trial court stated: "I am not finding, particularly with respect to [MCL 722.31(4)(c)], that that has been met, based on the testimony that occurred after that initial testimony to establish the threshold."

The trial court nevertheless addressed the best-interest factors under MCL 722.23 because of counsels' "representations." The trial court found MCL 722.23(a), (b), and (c) were neutral. The trial court found MCL 722.23(d) favored plaintiff, and noted it was "unknown" whether defendant and the children would reside with her brother's family, or "move to a separate home environment." The trial court found MCL 722.23(e) favored plaintiff "because the home that [] [defendant] would share with her relatives in Virginia is not hers, and so, she cannot control over what period of time she and the children would be welcome there." Next, MCL 722.23(f) and (g) were equal because "both parents are fit" and neither had any impediments. The trial court found MCL 722.23(h) did not favor either party. As for MCL 722.23(i), the trial court noted it interviewed the children and found they were "of age" and considered the conversations with the children. Under MCL 722.23(j), the trial court found both parents "failed to consistently . . . help maintain the parent/child relationship." Noting that defendant wished to move the children to another state, the trial court found defendant "was not willing to take big strides at fostering a continuing relationship between the children and [plaintiff]." Although defendant had a "good professional motive to leave," she did not "prioritize[] the continuing relationship [between] [] [plaintiff] and the children." As a result, the trial court found this factor favored plaintiff. Under MCL 722.23(k), the trial court found domestic violence did not play a role. Under MCL 722.23(l), or "the catch all," the trial court noted it was concerned with how the parents portray one another in front of the children. The trial court entered an order denying the motion for a change of domicile. Defendant now appeals.

II. ANALYSIS

A. STANDARDS OF REVIEW

"This Court reviews a trial court's decision regarding a motion for change of domicile for an abuse of discretion and a trial court's findings regarding the factors set forth in MCL 722.31(4) under the great weight of the evidence standard." *Rains v Rains*, 301 Mich App 313, 324; 836 NW2d 709 (2013) (quotation marks and citation omitted). "An abuse of discretion is found only in extreme cases in which the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will or the exercise of passion or bias." *Brown v Loveman*, 260 Mich App 576, 600-601; 680 NW2d 432 (2004) (quotation marks and citations omitted); see also *Maier v Maier*, 311 Mich App 218, 221; 874 NW2d 725 (2015).

[A] trial court's findings, including the trial court's findings in applying the MCL 722.31 factors, should be affirmed unless the evidence clearly preponderates in the opposite direction. In reviewing a trial court's findings, this Court should

defer to the trial court's determination of credibility. Further, this Court may not substitute its judgment on questions of fact unless the facts clearly preponderate in the opposite direction. [*Moote v Moote*, 329 Mich App 474, 478; 942 NW2d 660 (2019) (quotation marks and citations omitted).]

"This Court reviews de novo the proper interpretation and application of statutes. . . ." *Yachcik v Yachcik*, 319 Mich App 24, 32; 900 NW2d 113 (2017) (quotation marks and citation omitted).

> In the child custody context, questions of law are reviewed for clear legal error. A trial court commits legal error when it incorrectly chooses, interprets, or applies the law. The trial court's findings of fact are reviewed under the great weight of the evidence standard. This Court may not substitute [its] judgment on questions of fact unless the facts clearly preponderate in the opposite direction. However, where a trial court's findings of fact may have been influenced by an incorrect view of the law, our review is not limited to clear error. [*Id*. at 31-32 (quotation marks and citations omitted; alteration in original).]

## B. *D'ONOFRIO* FACTORS

Defendant contends the trial court erred by finding she did not show, by a preponderance of the evidence, that the threshold *D'Onofrio* factors warranted a change of domicile. We disagree.

MCL 722.31 governs a child's legal residence and states in pertinent part:

> (1) A child whose parental custody is governed by court order has, for the purposes of this section, a legal residence with each parent. Except as otherwise provided in this section, a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued.

> * * *

> (4) Before permitting a legal residence change otherwise restricted by subsection (1), the court shall consider each of the following factors, with the child as the primary focus in the court's deliberations:

> (a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

> (b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

> (c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that

can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

The trial court must apply a four-part test to address the propriety of a change in the child's domicile:

A motion for a change of domicile essentially requires a four-step approach. First, a trial court must determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4), the so-called *D'Onofrio* factors, support a motion for a change of domicile. Second, if the factors support a change in domicile, then the trial court must then determine whether an established custodial environment exists. Third, if an established custodial environment exists, the trial court must then determine whether the change of domicile would modify or alter that established custodial environment. Finally, if, and only if, the trial court finds that a change of domicile would modify or alter the child's established custodial environment must the trial court determine whether the change in domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence. [*Rains*, 301 Mich App at 325 (footnote omitted).]

As for the first step, a "party requesting the change of domicile has the burden of establishing by a preponderance of the evidence that the change is warranted." *Id*. at 326-327 (quotation marks and citation omitted).

1. CAPACITY TO IMPROVE THE QUALITY OF LIFE FOR CHILD AND PARENT

The trial court's findings regarding the *D'Onofrio* factors were not against the great weight of the evidence. First, under MCL 722.31(4)(a), the trial court found the proposed move to Virginia would (a) improve defendant's quality of life, (b) not improve VW's life, and (c) improve DTW's life marginally but not enough to outweigh the benefits of having plaintiff involved in his life. Specifically, the trial court found defendant would earn a higher income and have the support of relatives. The trial court acknowledged defendant's efforts for creating a setting in which her brother, a special needs teacher, could help DTW. Ultimately, the trial court found the "exclusion of [plaintiff] from their everyday life" would not benefit the children. The evidence showed defendant's quality of life would improve by relocating to Virginia because, in addition to having a higher paying job based in Washington, D.C., she would have family to support her and help raise her children. In fact, defendant's plan was to move in with her brother, sister-in-law, and three nieces. Although their home was more spacious than defendant's home in Michigan, that living situation was only temporary, and defendant's plan for housing thereafter was unclear.

Defendant also testified living in Virginia would allow her to raise the children "with a village," and the brother and sister-in-law would help with childcare responsibilities. As for DTW, who has various special needs and behavioral issues, the record established he could attend similar special education programs in Virginia as in Michigan. DTW would also be enrolled at the middle school where defendant's brother taught special education and he could serve as DTW's "in-house advocate." Defendant testified that both children's quality of life would improve because they would (a) receive home schooling from her sister-in-law, in addition to attending school, and (b) grow up surrounded by defendant's family members, which would provide them a "sense of community." Defendant further asserted the children would benefit from smaller classroom sizes in Virginia. Defendant testified VW had a "good school record" and would "thrive" in Virginia, but acknowledged that the relocation would be difficult because VW would be leaving her friends in Michigan. Defendant likewise acknowledged DTW would also "struggle with the separation from [plaintiff]." Plaintiff contended he was a "major proponent" in the children's lives and had worked to address DTW's issues. Even if this factor constituted a close call, the facts do not clearly preponderate in the opposite direction. *Moote*, 329 Mich App at 478.

## 2. EXERCISE OF PARENTING TIME AND DESIRE TO DEFEAT THE SCHEDULE

As for the second *D'Onofrio* factor, MCL 722.31(4)(b), defendant contends she "should have been held to have met her burden" because there was no evidence she sought to " 'defeat or frustrate' " plaintiff's parenting time. The trial court found this consideration was not "at hand," noting both parents complied with parenting time. The trial court also noted both parents have "departed from their obligations" and warned the parents not to "let spite and ill will" interfere with the schedule. The evidence supported the parties were generally compliant with their respective parenting time obligations, but both had missed parenting time in the past. The record did not establish the relocation was "inspired" by defendant's desire to defeat or frustrate plaintiff's parenting time schedule. The trial court's finding addressing the relocation was not against the great weight of the evidence.

## 3. IMPACT OF DOMICILE CHANGE ON PARENTAL RELATIONSHIPS

Regarding the third *D'Onofrio* factor, MCL 722.31(4)(c), the trial court found there was no evidence showing the change of domicile for the children would provide regular and continuous contact with plaintiff. Specifically, defendant failed to highlight the preservation and fostering of plaintiff's relationship with the children. The trial court did not "hear[] any proposal of what type of parenting time arrangement could preserve [the children's] relationship" with plaintiff. The trial court noted advance planning efforts were required, but the parties did not address travel logistics or financing. The parties did not discuss how to minimize interference with the children's school schedules if the children's domicile changed. Defendant stated plaintiff would still be able to see the children on holidays or "anytime that they're not in school." Defendant indicated the children could call or video chat with plaintiff, and she would encourage the children to have a relationship with plaintiff. Defendant's counsel also argued plaintiff would see the children "the entire summer, [and] the holidays."

Plaintiff did not believe the parenting time schedule would allow him to maintain his relationships with the children if they lived in Virginia. A proposed parenting time schedule "need not be equal with the current visitation plan," it must provide "a realistic opportunity to preserve

and foster the parental relationship previously enjoyed by the nonrelocating parent." *McKimmy v Melling*, 291 Mich App 577, 584; 805 NW2d 615 (2011) (quotation marks and citation omitted). Defendant contends the trial court ruled against her because she "failed to make a proposal" for plaintiff's parenting time. However, the trial court expressed concern with the decreased frequency of plaintiff's parenting time with the children, noting there was no proposal offered *which would preserve his parenting time*. The trial court's finding, that the parental relationship for the children and plaintiff could not be preserved, was not against the great weight of the evidence.

## 4. DOMICILE CHANGE MOTIVE TO SECURE FINANCIAL SUPPORT ADVANTAGE

Concerning the fourth *D'Onofrio* factor, MCL 722.31(4)(d), the trial court found neither parent was "motivated by any interest in increasing or reducing child support obligations." There was no evidence establishing plaintiff, the parent opposing the relocation, was motivated by any desire to secure a financial advantage. The trial court properly found this factor did not favor either party.

## 5. DOMESTIC VIOLENCE AND CHILD IMPACT

As to the fifth *D'Onofrio* factor, MCL 722.31(4)(e), the trial court did not find "there was any domestic violence to be considered here[.]" The trial court had "concerns about the extent to which each parent has engaged in conversation with the children or in the children's presence that's derogatory toward the other parent." Defendant asserts there was evidence establishing plaintiff put his hands "around the back of DTW's neck." Plaintiff, however, denied choking DTW and claimed that his actions were designed to calm DTW down because he was "acting up." Although defendant does not contend on appeal that plaintiff engaged in domestic violence against her, she testified plaintiff choked her in the past and engaged in other incidents of domestic violence, which plaintiff denied. To the extent this was a matter of credibility, this Court "defer[s] to the trial court's determination of credibility." *Moote*, 329 Mich App at 478. The trial court's finding was not against the great weight of the evidence.

## 6. TRIAL COURT'S APPLICATION OF THE FACTORS

Defendant also asserts the trial court made conflicting determinations regarding whether the *D'Onofrio* factors supported her motion to change domicile and, at least twice, did not know or remember the evidence. As a result, defendant contends the trial court's "difficulties with tracking or recalling the evidence in this case permeated and enfeebled its findings on this issue." Although the trial court was unclear at times, this argument is without merit. The trial court made differing oral pronouncements regarding whether the first step was met, or whether there was a preponderance of the evidence that the *D'Onofrio* factors supported the motion. Ultimately, after further testimony by the parties, the trial court concluded it was "not satisfied the preliminary requirements of MCL 722.31(4) have been established." This conclusion is consistent with the only order entered by the trial court, which denied defendant's motion for change of domicile. See *In re Contempt of Harry*, 282 Mich App 656, 678; 765 NW2d 44 (2009) ("[A] court speaks through its written orders and judgments, not through its oral pronouncements."). The trial court was entitled to revisit its initial threshold determination and conclude that the ultimate evidence and

credibility evaluations did not support the *D'Onofrio* factors. Under the circumstances, we do not conclude that the trial court erred.

## C. BEST INTERESTS

Defendant contends the trial court's findings under MCL 722.23(b), (d), (h), and (k) were against the great weight of the evidence. However, because the trial court ultimately concluded defendant did not satisfy the initial statutory threshold, or failed to establish by a preponderance of the evidence the *D'Onofrio* factors supported the motion for a change of domicile, the trial court was not required to determine whether the relocation was in the children's best interests. In any event, after review of the record, we also conclude that the trial court's findings addressing the children's best interests were not against the great weight of the evidence.

Affirmed.

/s/ Adrienne N. Young
/s/ Anica Letica
/s/ Daniel S. Korobkin